*Original*

## IN THE COURT OF COMMON PLEAS
## CLARK COUNTY, OHIO

STEPHEN JENKINS
524 South Clairmont Ave.
Springfield, Ohio 45505

                  Plaintiff,

        v.

EXPRESS SERVICES, INC. DBA EXPRESS
EMPLOYMENT PROFESSIONALS
2200 N Limestone St. #116
Springfield, Ohio 45503

    **Serve Also:**

    Express Services, Inc.
    c/o CT Corp. System
    Registered Agent
    PO Box 1488
    Springfield, Ohio 45501

- and -

KONECRANES, INC.
4401 Gateway Blvd.
Springfield, Ohio 45502

    **Serve Also:**

    Konecranes, Inc.
    c/o National Registered Agents, Inc.
    Registered Agent
    4400 Easton Commons Way,
    Suite 125
    Columbus, Ohio 43219

-and-

TRACY VASSAR
c/o Express Services, Inc. dba Express
Employment Professionals
2200 N Limestone St. #116
Springfield, OH 45503

CASE NO. **23 CV 0660**

JUDGE:

**COMPLAINT FOR DAMAGES
AND REINSTATEMENT**

**JURY DEMAND ENDORSED
HEREIN**

Clark County, Ohio
**FILED**
OCT 0 5 2023
Common Pleas Court
Melissa M. Tuttle, Clerk

**-and-**                                              )
                                                       )
SHANE SPENCER                                          )
242 S Clairmont Ave.                                   )
Springfield, OH 45505                                  )
                                                       )
    **Serve Also:**                )
                                                       )
    SHANE SPENCER                   )
    c/o Konecranes, Inc.            )
    4401 Gateway Blvd.              )
    Springfield, Ohio 45502         )
                                                       )
**-and-**                                              )
                                                       )
SCOTT JUDY                                             )
1300 Skyline Ln.                                       )
Springfield, OH 45505                                  )
                                                       )
    **Serve Also:**                )
                                                       )
    SCOTT JUDY                      )
    c/o Konecranes, Inc.            )
    4401 Gateway Blvd.              )
    Springfield, Ohio 45502         )
                                                       )
                                                       )
            Defendants.        )
                                                       )

      Plaintiff, Stephen Jenkins, by and through undersigned counsel, as his Complaint against

the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Stephen Jenkins is a resident of the County of Clark, State of Ohio.

2. At all times herein, Jenkins was acting in the course and scope of his employment.

3. Defendant Express Services, Inc. d/b/a Express Employment Professionals ("Express

    Employment") is a foreign-incorporated company that conducts business in the State of Ohio.

4. Express Employment was at all times hereinafter mentioned an employer within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*., and R.C. § 4112.01 *et seq*.

5. Defendant Konecranes, Inc. ("Konecranes") is a foreign limited liability company that conducts business in the State of Ohio.

6. Konecranes was at all times hereinafter mentioned an employer within the meaning of the ADEA, the ADA, and R.C. § 4112.01 *et seq*.

7. Tracy Vasser is a resident of Ohio.

8. At all times herein, Vasser was acting in the course and scope of her employment.

9. Vasser was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Express Employment who acted directly or indirectly in the interest of Express Employment.

10. Vasser was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

11. Shane Spencer is a resident of Ohio.

12. At all times herein, Spencer was acting in the course and scope of his employment.

13. Spencer was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Konecranes who acted directly or indirectly in the interest of Konecranes.

14. Spencer was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

15. Scott Judy is a resident of Ohio.

16. At all times herein, Judy was acting in the course and scope of his employment.

3

17. Judy was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Konecranes who acted directly or indirectly in the interest of Konecranes.

18. Judy was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

19. All of the material events alleged in this Complaint occurred in Clark County.

20. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. §2307.382(A)(1) and (4).

21. Venue is proper pursuant to Civ. R. 3(C)(3) and (6).

22. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

23. Within 300 days of the conduct alleged below, Jenkins dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC"), no Charge number yet assigned, against Defendants. ("Jenkins EEOC Charge").

24. The Jenkins EEOC Charge is currently pending before the OCRC, and Jenkins intends to amend this complaint to include claims of age discrimination, disability discrimination and failure to accommodate, and retaliation under the ADEA, the ADA, and R.C. § 4112 et seq.

25. Jenkins is in the process of exhausting all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

26. Jenkins is a former employee of Express where he was placed in the position of Material Handler with Konecranes.

27. On or about February 13, 2023, Jenkins began working for Konecranes through Express.

28. Jenkins suffers from migraines, heart aneurism, anxiety, left knee problems, and right ankle problems.

29. Jenkins is sixty-eight years old.

30. Jenkins is in a protected class for his age.

31. Defendants had notice of Jenkins' age and protected class-status.

32. Jenkins has a long-term left knee injury, right ankle injury, consistent migraines, and a heart aneurism. (Jenkins' "Disabilities").

33. Due to Jenkins' Disabilities, he has trouble walking, working, eating, breathing, and other everyday life activities.

34. As a result of suffering from his Disabilities, Jenkins is and was considered disabled within the meaning of 42 U.S.C. 126 § 12101 *et seq.*

35. As a result of suffering from his Disabilities, Jenkins is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

36. In the alternative, Defendants perceived Jenkins as being disabled.

37. In the alternative, Defendants perceived that Jenkins's Disabilities substantially impaired one or more of his major life activities, including working, sleeping, thinking, focusing, and concentrating.

38. At all times relevant herein, Jenkins was qualified for his position(s).

39. In February 2023, Jenkins responded to an advertisement for employment at Konecranes.

40. Jenkins interviewed for three different positions and received offers for all three.

41. Jenkins declined two positions despite higher pay and higher title because he wanted a position that did not require him to lift heavy objects.

42. Jenkins cited his Disabilities as the basis for choosing the Konecranes position.

43. Defendants thus had notice of Jenkins' Disabilities and protected class.

44. Jenkins informed Konecranes that he sought an office job with little to no manual labor because of his age and medical conditions.

45. Konecranes Department Manager Shane Spencer assured Jenkins that he would be placed in a position appropriate to his requests.

46. Specifically, Spencer told Jenkins that he would be placed in a position to handle small packages and light-duty work. ("Request for Accommodations").

47. Jenkins accepted the position upon reliance on Spencer's assurances that his Request for Accommodations would be met.

48. Relying upon Spencer's assurances, Jenkins filled out the new-hire paperwork with Express Employment Specialist Tracy Vasser.

49. On or about February 13, 2023, Jenkins arrived at Konecranes for his first day of work.

50. Immediately, Team Lead Scott Judy told Jenkins that, "We are going to switch jobs with you. You are going to work the forklift and work on the floor. Kimberly [Last Name Unknown] is going to work the UPS job."

51. Judy placed Jenkins in a heavy-lifting and heavy-duty position despite Spencer's previous assurances. ("Failure to Accommodate").

52. The Failure to Accommodate was because of Jenkins' Disabilities.

53. The Failure to Accommodate was because of Jenkins' perceived Disabilities.

54. A substantially younger employee (Kimberly Last Name Unknown) was given Jenkins' position of light-duty work.

55. Regularly, Spencer and Judy required Jenkins to lift heavy boxes weighing in excess of 100 pounds.

6

56. As part of his duties, Jenkins worked a forklift and moved heavy work boxes and other materials.

57. Judy mistreated Jenkins by making negative and disparaging comments about Jenkins.

58. Judy regularly made fun of Jenkins' age and his medical conditions. ("Discriminatory Comments").

59. Judy refused to engage with Jenkins when he requested modification to his job duties due to his disabilities. ("Second Failure to Accommodate").

60. The Second Failure to Accommodate was because of Jenkins' Disabilities.

61. The Second Failure to Accommodate was because of Jenkins' perceived Disabilities.

62. Judy often acted in unprofessional and dangerous behavior.

63. Judy drove his forklift recklessly around the floor, almost injuring many employees.

64. On or about March 14, 2023, Jenkins changed a propane tank out with a new tank.

65. During the process, the propane tank broke, and negative 50-degree propane liquid made contact with Jenkins' arm. (Jenkins' "Injuries").

66. As a result of Jenkins' Injuries, Jenkins is further disabled.

67. As a result of suffering from Jenkins' Injuries, Jenkins is and was considered disabled within the meaning of 42 U.S.C. 126 § 12101 *et seq.*

68. As a result of suffering from Jenkins' Injuries, Jenkins is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

69. In the alternative, Defendants perceived Jenkins as being disabled.

70. In the alternative, Defendants perceived that Jenkins's Disabilities substantially impaired one or more of his major life activities, including working, sleeping, thinking, focusing, and concentrating.

7

71. The liquid seriously injured Jenkins' arm and he sought treatment at a hospital.

72. Jenkins received light duty for the following two weeks.

73. Jenkins filed a Workers' Compensation claim because of the Injuries he experienced on March 14, 2023.

74. On or about April 12, 2023, Judy continued his Discriminatory Comments against Jenkins.

75. Judy referred to the workplace as "his country club," meaning that Judy could deny membership/acceptance of other employees. ("Country Club Comment").

76. Jenkins understood the Country Club Comment to be a threat against his future employment.

77. Other Konecranes employees previously told Judy to refrain from using that language.

78. Konecranes failed to take any corrective action towards Judy.

79. On or about April 14, 2023, Jenkins complained to Spencer about Judy's discriminatory and bullying behavior.

80. Specifically, Jenkins complained to Spencer about the job duties he was assigned and gave Spencer instances of Judy's bullying behavior based on his age and disabilities. ("Discrimination Complaint").

81. Jenkins gave Spencer specific instances of Judy's dangerous activities. ("Report of Unsafe Work Environment").

82. Immediately after Jenkins' Discrimination Complaint and Report of Unsafe Work Environment, Spencer terminated Jenkins' employment.

83. Defendants have a policy of investigating significant workplace issues or events.

84. The Discrimination Complaint and Report of Unsafe Work Environment reported a significant workplace issue or event.

85. Pursuant to Defendants' policies, the Discrimination Complaint and Report of Unsafe Work Environment should be investigated.

86. Alternatively, pursuant to Defendants' policies, the Discrimination Complaint and Report of Unsafe Work Environment should not be investigated.

87. An investigation should include interviewing the complainant.

88. An investigation should include interviewing the subject of the complaint.

89. An investigation should include interviewing the subject of the reported discrimination.

90. An investigation should include interviewing witnesses to the reported discrimination.

91. An investigation should include getting a written statement from the complainant.

92. An investigation should include getting a written statement from the subject of the complaint.

93. An investigation should include getting a written statement from the subject of the reported discrimination.

94. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not interview Jenkins.

95. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not interview Judy.

96. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not interview any witnesses.

97. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not get a written statement from Jenkins.

98. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not get a written statement from Judy.

99. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not get a written statement from any witnesses.

100. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants conducted no investigation whatsoever.

101. By failing to investigate the Discrimination Complaint and Report of Unsafe Work Environment, Defendants ratified Judy's conduct.

102. By failing to investigate the Discrimination Complaint and Report of Unsafe Work Environment, Defendants allowed Judy's conduct to continue.

103. Failing to investigate the Discrimination Complaint and Report of Unsafe Work Environment is an adverse action.

104. Failing to investigate the Discrimination Complaint and Report of Unsafe Work Environment is an adverse employment action.

105. Defendants willfully failed to investigate the Discrimination Complaint and Report of Unsafe Work Environment.

106. Defendants intentionally failed to investigate the Discrimination Complaint and Report of Unsafe Work Environment.

107. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not correct Judy's conduct.

108. In response to the Discrimination Complaint and Report of Unsafe Work Environment, Defendants did not tell Jenkins why they declined to correct Judy's conduct.

109. Jenkins also requested a reasonable accommodation during his conversation with Spencer ("Accommodation Request").

110. Jenkins requested to be placed in a position without heavy lifting because of his age and disabilities.

111. Spencer failed to engage with Jenkins about his reasonable accommodation request.

112. Spencer failed to take any corrective action.

113. Spencer instead targeted Jenkins in retaliation.

114. On or about April 14, 2023, Vasser communicated with Jenkins via email and text message.

115. Vasser informed Jenkins that Konecranes terminated his employment effective immediately.

116. In the messages, Vasser claimed that Jenkins' employment termination was because of attendance and personality conflicts.

117. Defendants terminated Jenkins' employment on April 14, 2023. ("Termination of Employment").

118. Defendants' stated basis for termination was Jenkins' attendance and personality conflicts ("Stated Basis for Termination").

119. Defendants have a progressive disciplinary policy.

120. Defendants used a progressive disciplinary policy.

121. Defendants used a progressive disciplinary policy for employees who are not disabled.

122. Defendants used a progressive disciplinary policy for employees who did not submit a request for an accommodation.

123. Defendants used a progressive disciplinary policy for employees who are not over forty years old.

124. Defendants used a progressive disciplinary policy for employees who did not file a Workers' Compensation claim.

125. Under the progressive disciplinary policy, Jenkins had not been given a verbal warning related to the Stated Basis for Termination.

126. Under the progressive disciplinary policy, Jenkins had not been given a written warning related to the Stated Basis for Termination.

127. Under the progressive disciplinary policy, Jenkins had not been given a final written warning related to the Stated Basis for Termination.

128. Under the progressive disciplinary policy, Jenkins had not been given a suspension related to the Stated Basis for Termination.

129. Prior to terminating Jenkins, Defendants never issued any written communication criticizing Jenkins for any reason related to the Stated Basis for Termination.

130. The Stated Basis for Termination has no basis in fact.

131. The Stated Basis for Termination did not actually motivate Defendants' decision to terminate Jenkins.

132. The Stated Basis for Termination was insufficient to motivate the termination of Jenkins.

133. The Stated Basis for Termination was pretext to terminate Jenkins.

134. Defendants did not terminate similarly situated employees for reasons like the Stated Basis for Termination.

135. Defendants' termination of Jenkins' employment was retaliation for the Discrimination Complaint and Report of Unsafe Work Environment.

136. Defendants terminated Jenkins' employment because of Jenkins' disabilities.

137. Defendants terminated Jenkins' employment because of Jenkins' request for an accommodation.

138. Defendants terminated Jenkins' employment because of Jenkins' age.

139. Defendants terminated Jenkins' employment because of Jenkins' Report of Unsafe Work Environment.

140. Defendants terminated Jenkins' employment because of Jenkins' Workers' Compensation claim.

141. By terminating Jenkins' employment, Defendants made it less likely for a reasonable employee to request an accommodation.

142. The Termination of Employment constitutes retaliation.

143. The Termination of Employment constitutes disability discrimination.

144. The Termination of Employment constitutes age discrimination.

145. Defendants knowingly skipped progressive disciplinary steps in terminating Jenkins' employment.

146. Defendants knowingly terminated Jenkins' employment.

147. Defendants knowingly took adverse employment actions against Jenkins.

148. Defendants knowingly took adverse actions against Jenkins.

149. Defendants intentionally skipped progressive disciplinary steps in terminating Jenkins.

150. Defendants intentionally terminated Jenkins' employment.

151. Defendants intentionally took adverse employment actions against Jenkins.

152. Defendants intentionally took adverse actions against Jenkins.

153. Defendants knew that skipping progressive disciplinary steps in terminating Jenkins would cause Jenkins harm, including economic harm.

154. Defendants knew that terminating Jenkins would cause Jenkins harm, including economic harm.

155. Defendants willfully skipped progressive disciplinary steps in terminating Jenkins.

156. Defendants willfully terminated Jenkins' employment.

157. There was a causal connection between Jenkins' disabilities and the Termination of Employment.

158. There was a causal connection between Jenkins' age and the Termination of Employment.

159. There was a causal connection between Jenkins' protected activity and the Termination of Employment.

160. As a result of Defendants' unlawful acts, Jenkins has suffered, and will continue to suffer, pecuniary harm.

161. As a result of Defendants' unlawful acts, Jenkins has suffered, and will continue to suffer, emotional distress.

## COUNT I: WORKERS' COMPENSATION RETALIATION

162. Jenkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

163. On or about April 14, 2023, Defendants terminated Jenkins' employment.

164. Defendants terminated Jenkins' employment in retaliation for Jenkins filing a claim for Workers' compensation benefits.

165. Within 90 days of the conduct described above, Defendants received a written notice of Jenkins' intent to pursue claims for Workers' Compensation retaliation under R.C. § 4123.90.

166. Jenkins was discharged without just cause for filing a claim for Workers' Compensation benefits; Jenkins is therefore entitled to recover damages from Defendants for its wrongful discharge of him in retaliation for filing a claim for Workers' Compensation benefits under R.C. § 4123.90.

167. As a direct and proximate result of Defendants' conduct, Jenkins has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Jenkins demands from Defendants the following:

(a) Issue a permanent injunction:

    (i)     Requiring Defendants to abolish discrimination, harassment, and retaliation;

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Jenkins for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Jenkins claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Evan R. McFarland*
Evan R. McFarland (0096953)
Trisha Breedlove (0095852)
    Trial Attorney
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorney for Plaintiff Stephen Jenkins*

16

## JURY DEMAND

Plaintiff Stephen Jenkins demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

17